IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LANCE IAN OSBAND,

    Petitioner,

vs.

STEVEN W. ORNOSKI,
Acting Warden of San Quentin State Prison,

    Respondent.

No. CIV S-97-0152 WBS KJM

DEATH PENALTY CASE

ORDER

After ordering an evidentiary hearing on some claims in the amended petition, the undersigned permitted the parties to move for discovery. See Feb. 6, Mar. 21, and June 14, 2006 Orders. The parties' motions for discovery came on for hearing July 26, 2006 at 10:00 a.m. before the undersigned. Tim Schardl and Tim Brosnan appeared for petitioner; Mr. Brosnan appeared telephonically. Ward Campbell and Stephanie Mitchell appeared for respondent. Upon review of the motions and the documents in support and opposition,[1] upon hearing the arguments of counsel and good cause appearing therefor, the court finds and orders as follows.

/////

/////

---

[1] In addition to the briefs filed prior to the hearing, the undersigned has considered petitioner's August 1, 2006 supplemental opposition to respondent's motion for discovery.

1

## LEGAL STANDARDS

The parties in a habeas proceeding are not entitled to discovery as a matter of course. Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rather, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6, Rules Governing § 2254 Cases. Good cause is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

## PETITIONER'S MOTION FOR DISCOVERY

Petitioner seeks an order directing respondent to "learn of, obtain, and disclose to Petitioner any favorable evidence known to the others acting on the government's behalf in the case, including police." Petitioner admits that the governmental agencies involved already have an obligation to turn over any exculpatory evidence but says his request is based on: (1) the "fact" that the State's failure to meet its Brady obligations "is a recurrent phenomena, particularly in California capital cases;" and (2) petitioner "is able to corroborate his suspicion that the State possesses favorable materials it has not disclosed."

Petitioner acknowledges that, despite his first "fact," he has no specific evidence that the state has concealed evidence in this case. Moreover, petitioner's list of corroboration for his suspicion that the State has not disclosed evidence does not withstand scrutiny. Petitioner raises five points of "corroboration:"

    1.    The police department solicited information on the crime and issued a request for a "secret witness listing." A Sacramento newspaper repeated the request.

    2.    Petitioner's mother received the "secret witness" letter[2] before trial.

---

[2] Petitioner's mother received a letter signed by a "secret witness" after petitioner's arrest but before trial that identified two "boys" "that knows a plenty about the crime."

2

       3.       The two men identified in the "secret witness" letter, Richard Williams and W.J. Thomas, were heard arguing about which of them had killed the victim here.

       4.       Williams was "involved" in a double homicide, which occurred after the murder here but before petitioner's trial. He told police his girlfriend's parents he committed the murder. He left Sacramento and did not testify at that trial. A friend told police he was afraid to give them information that might incriminate Williams because he was afraid of retaliation. Petitioner argues this case is somehow similar to the present one.

       5.       Witnesses identified a number of strangers in the area around the time of the murder.

According to petitioner, the lack of evidence from prosecution files on these issues indicates petitioner's trial counsel may not have received all exculpatory evidence at trial. This speculative assertion simply is not enough to establish good cause. Good cause requires something more specific. For example, in Bracy good cause was found where the petitioner presented specific information of judicial bias. The Court in Bracy noted the general rule, also relevant in the present case, that "we presume that public officials have '"properly discharged their official duties."'" 520 U.S. at 909 (quoting United States v. Armstrong, 517 U.S. 456, 464 (1996)). However, the Court found that presumption had been "soundly rebutted." Id. at 909. The petitioner in Bracy supported "his discovery request by pointing not only to [the judge's] conviction for bribe taking in other cases, but also to additional evidence . . . that lends support to his claim that [the judge] was actually biased in petitioner's own case." Id.

Petitioner also argues that what he seeks is not exactly discovery. Rather, he seeks confirmation that respondent has complied with his obligations under Brady and subsequent cases "to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437

3

(1995).  Respondent argues he does not have a duty to repeat what the prosecutor can be presumed to have done at trial – checking with all prosecuting agencies for any exculpatory information.  It is not clear what duty the state has at this point.  While the case law shows that the state has a continuing duty to turn over exculpatory evidence, it does not establish how that duty must be carried out and does not require reporting to the defense along the way.  Petitioner points to a California appellate court's expression of the "realities" of discovery in criminal cases:

> The regrettable reality is that sometimes prosecutors do not turn over materials to which the defense is entitled. The reality is that prosecutors do not always know of the existence of discoverable materials unless they ask the appropriate agency. The reality is that even if prosecutors ask the appropriate agency, prosecutors are not always made aware of the existence of such materials for evident and obvious reasons both benign and inappropriate. The reality is that the defense is entitled to know what the evidence against a defendant is--both inculpatory and exculpatory. The reality is that the defense is entitled to know what materials exist that may aid in the preparation of the defense. The reality is that the prosecution does not always know what will aid the defense because the prosecution does not always know what the defense is and the prosecution has no way of knowing this unless the defense asks for the material the defense needs.
>
> The reality is also that the prosecution almost always knows what evidence is exculpatory in nature. Fundamentally, if the prosecution has failed in its Brady duty, the defense has no way of knowing this in a post-conviction proceeding unless it asks for all relevant material and unless the prosecution undertakes an evaluation of its file to determine if all material subject to Brady disclosure was turned over.
>
> It is axiomatic that one cannot prove what was not turned over if one does not know what was not turned over. Likewise it is simply nonsensical to apply a presumption that a duty was regularly performed for purposes of barring a request for materials that would show a duty was not regularly performed. There simply is no basis for such a presumption absent an assertion by the People that a review of the file does not disclose anything that was not turned over.

Curl v. Superior Court, 140 Cal. App. 4th 310, 324 (2006).  The court in Curl used this description to support its interpretation of a recent California statute on post-conviction

discovery. No such statute, or case law for that matter, supports petitioner's position here.

This court is sympathetic to the difficulty confronting defendants and habeas petitioners under Brady – there is no way to prove what was not turned over without knowing what was not turned over. The court is concerned, specifically, by respondent's counsel's assertion at the hearing that because the trial court already addressed these discovery issues, they need not be raised again here. There is no question that respondent has an obligation that continues throughout petitioner's legal proceedings, including this one, to disclose favorable information to petitioner. See Thomas v. Goldsmith, 979 F.2d 746, 749-50 (9th Cir. 1992); Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987). There also is no question that it has been many years since the defense requested discovery at trial. However, it is not clear when or even whether the state's lawyer in a post-conviction proceeding is required to make requests to prosecuting agencies about the availability of any new favorable evidence or any evidence that was not previously turned over. Petitioner seeks, without citation to any controlling authority, to have this court clarify the state's obligations. The undersigned does not find such clarification possible in the habeas context given the current state of the law. Rule 6 places limits on a party's right to discovery. Further, for better or worse, Brady leaves it up to the state to decide what information must be disclosed. "Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." Ritchie, 480 U.S. at 59.

Absent a more specific showing that the state has withheld evidence, this court is compelled to find petitioner has failed to demonstrate good cause for the discovery he seeks.

## RESPONDENT'S MOTION FOR DISCOVERY

In his reply brief, respondent withdraws two of his three discovery requests. His remaining request, as limited in his reply brief and at oral argument, is for any verbatim transcripts of statements by Osband's evidentiary hearing witnesses. Respondent's request is denied on a number of grounds. First, there is no showing respondent cannot obtain this

information himself.  To establish "good cause" under Rule 6, respondent must show "the material is not available by informal means."  Holt v. Wong, No. CIV F 97-6210 AWI, 2006 WL 1889945, *1 (E.D. Cal. July 10, 2006).  He has not done so.  Respondent has had, and still has, time to interview these witnesses himself.  He does not require discovery of the results of petitioner's counsel's hard work to make up for his failure to have done so.  Second, respondent's request is covered by a prior order in this case.  In April 2000, respondent sought discovery of, among other things, petitioner's counsel's files regarding alternate suspects.  The court denied the request noting that "petitioner's waiver of attorney/client privilege and work product protection with respect to these documents is limited to the work of trial counsel."  June 23, 2000 Order at 10.  Third, these documents are protected as work product and respondent has made no showing of substantial need justifying their discovery.

Witness statements prepared in anticipation of litigation are protected work product even if they do not contain any mental impressions of counsel.  Kintera, Inc. v. Convio, Inc., 219 F.R.D. 503, 509 (S.D. Cal. 2003).[3]  Those statements "may be discoverable upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3)."[4]  Id.  In Kintera, as here, the party seeking discovery argued the witness statements were necessary to prepare for cross-

---

[3] Respondent cites two cases in support of his argument that verbatim transcripts of witness interviews are not work product.  However, both cases are distinguishable.  Both involved the answers to questionnaires distributed to third parties and in both cases blank questionnaires were provided to the opposing parties in discovery, indicating that they did not constitute work product.  See Morisky v. Public Service Elec. and Gas Co., 191 F.R.D. 419 (D. N.J. 2000); Dobbs v. Lamonts Apparel, Inc., 155 F.R.D. 650 (D. Alaska 1994).

[4] The bases for petitioner's assertion of work product protection is Rule 26(b)(3).  As provided by Rule 11, Rules Governing § 2254 Cases, the court may apply Rule 26 to the extent it is not inconsistent with the habeas rules.  Because Rule 26 is not inconsistent, the undersigned finds its application useful here.

1  examination. The court rejected that argument noting that the party had the right to interview or
2  depose the witnesses. <u>Id.</u> at 510; <u>see also</u> <u>In re International Systems and Controls Corp.</u>
3  <u>Securities Litigation</u>, 693 F.2d 1235, 1240 (5th Cir. 1982) ("We agree with the general
4  proposition that discovery of work product will be denied if a party can obtain the information he
5  seeks by deposition"). "The mere possibility that these statements may have some impeachment
6  value does not create a substantial need for their production." <u>Kintera</u>, 219 F.R.D. at 510.
7  Further, "broad unsubstantiated assertions of unavailability or faulty memory are not sufficient."
8  <u>In re International Systems</u>, 693 F.2d at 1240.

       Finally, petitioner seeks the imposition of sanctions against respondent and complains, in some detail, about respondent's violation of the court's prior orders, including one requiring a joint statement of any discovery disputes. The court declines to impose sanctions, particularly where, as here, petitioner has court-appointed and government-funded counsel. However, the court is concerned that respondent's disregard of court-ordered procedures slows the progress of these proceedings. Respondent is cautioned that his failure to attend to court orders and procedures risks adverse consequences in the future.

       For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

    1.    Petitioner's June 28, 2006 motion for discovery is denied.

    2.    Respondent's June 28, 2006 motion for discovery is denied.

    3.    The dates set out in the court's June 14, 2006 scheduling order remain the same.

DATED: August 29, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

osbandevihrgdisc.or