IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LANCE IAN OSBAND,

    Petitioner,

vs.

ROBERT L. AYERS, JR.,
  Acting Warden of San Quentin
State Prison,

    Respondent.
                             /

No. CIV S-97-0152 WBS KJM

DEATH PENALTY CASE

ORDER

        Previously, the undersigned found the June 14, 2006 protective order inapplicable to the evidentiary hearing, which concluded on May 2, 2007. Apr. 24, 2007 Order. The April 24 order set out a procedure for protecting testimony and exhibits that should be sealed. The court required the parties to cluster questions that might bring out protected information, make an off-the-record proffer showing what protected evidence might be adduced, and show a compelling need to close that portion of the hearing. In practice, this procedure was difficult to implement in part because the natural flow of questions resulted in only some questions adducing potentially protected information and in part because counsel could not always predict whether an answer would contain protected information. As a result of these difficulties and due to the lack of public interest in attending the hearing, the hearing was closed and the transcript ordered temporarily sealed during the testimony of petitioner's trial attorneys, Vincent O'Brien and

1  Richard Reese, and of jury consultant Dr. Wendy Saxon.  The undersigned informed counsel that
2  after receipt of the final hearing transcript the court would seek clarification of precisely what
3  testimony and exhibits should remain under seal and what should be made public.  The relevant,
4  final transcripts have been received.[1]  The purpose of this order is to examine the bases for
5  permitting portions of those transcripts to remain sealed, tentatively identify portions to remain
6  sealed, and request comment from the parties.
7        The First Amendment creates a "strong presumption" in favor of public access to
8  court proceedings.  Foltz v. State Farm Mutual Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir.
9  2003); Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 10 (1986); Globe Newspaper Co. v.
10 Superior Court, 457 U.S. 596, 603 (1982).  To overcome this presumption, a party seeking
11 confidentiality must show "compelling reasons" and the court must "articulate a factual basis"
12 justifying confidentiality that is not "based on hypothesis or conjecture."  California v. Safeway,
13 Inc., 355 F. Supp. 2d 1111, 1114 (C.D. Cal. 2005); Pintos v. Pacific Creditors Assoc., ___ F.3d
14 ___, 2007 WL 2743502, *5 (9th Cir. Sept. 21, 2007); Kamakana v. City and County of
15 Honolulu, 447 F.3d 1172, 1177 (9th Cir. 2006).  It should be noted that Safeway and Kamakana
16 involve sealing of summary judgment pleadings and exhibits.  There is some case law indicating
17 that sealing a transcript, at least of a criminal proceeding, should be subject to a higher standard.
18 Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir.1988) ("The common law
19 does not afford as much substantive protection to the interests of the press and the public as does
20 the First Amendment.").
21 /////

---

[1] As discussed at the September 20, 2007 status conference, the morning portion of the final day of the evidentiary hearing, May 2, has not been transcribed.  At this point, it is not clear the recorded testimony will be recoverable from the steno machine used by the court reporter that day.  See October 1, 2007 Joint Status Report Re Hearing Transcript.  As the hearing on May 2, 2007 was not sealed, that transcript is not necessary to the issues addressed in this order.  In addition, a small portion of the April 23, 2007 hearing has not yet been transcribed.  It does not include any testimony so is also not necessary to the issued addressed herein.  In any event, the transcript for this latter portion should be filed shortly.

1
2
3
4
> [T]he circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where, as in the present case, the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.

5 Globe Newspaper, 457 U.S. at 606-07.

6 Of course, the present case is not a criminal proceeding. Nevertheless, this court

7 may not simply seal days of testimony and exhibits. See Valley Broadcasting Co. v. United

8 States District Court, 798 F.2d 1289 (9th Cir. 1986). Rather, the court must examine each

9 question, answer, and exhibit to determine whether compelling reasons exist to seal any of them.

10 Id. at 1296. The factors used to determine whether sealing is justified include:

11
12
13
14
> (1) the public's interest in understanding the judicial process; (2) whether disclosure of the material at issue could result in improper use (such as to incite scandal, libel a party or enable infringement of a party's trade secrets); (3) the interests of the parties, and the balance of equities; . . . and (5) the duty of the courts to balance all of these competing interests and to inform the public of the basis for its decision.

15 Safeway, 355 F. Supp. 2d at 1115. In the balance of equities, the importance of public access

16 rests on one side of the scale. The fact that this court is reviewing a decision of the California

17 Supreme Court adds weight to the public access factor. This court eventually must determine

18 whether the California Supreme Court's decision "was contrary to, or involved an unreasonable

19 application of, clearly established Federal law" or whether it "was based on an unreasonable

20 /////
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////

determination of the facts." 28 U.S.C. 2254(d).  Comity demands that this decision be made as transparently as possible.

> The Supreme Court observed in Press-Enterprise II, 478 U.S. at 13, 106 S. Ct. 2735, that Criminal acts, especially certain violent crimes, provoke **public** concern, outrage, and hostility. Further, since there are strong **public** interests not only in the prompt execution of state court criminal judgments, but also in the assurance that state court criminal judgments are constitutional, there is a corresponding interest in the **public's** access to, and understanding of, every stage of the appeals process to which capital defendants are entitled in order to test the constitutionality of their death sentences. Considerations of **comity** and federalism suggest that the **public's** interest in access to, and an understanding of, the appeals process is that much more significant with respect to habeas corpus proceedings, where the legitimacy of state court criminal convictions are challenged in federal courts.

Ashworth v. Bagley, 351 F. Supp. 2d 786, 790 (S.D. Ohio 2005) (emphases in original).

On the other side of the scale are: (1) petitioner's concerns that information originally intended to be confidential could be used against him in any retrial, and (2) the interests underlying the evidentiary privilege for attorney/client communications and the protection of attorney work product.  The Ninth Circuit Court of Appeals focused on the importance of these evidentiary privileges and protections when discussing the scope of a petitioner's waiver of them in raising an ineffective assistance of counsel claim:

> However sensible and necessary the waiver rule might be in practice, it nonetheless runs counter to the rationale behind the privilege and carries with it the potential of severely undermining the state's interest in maintaining the confidentiality of attorney-client communications.  Claims of ineffective assistance of counsel are routinely raised in felony cases, particularly when a sentence of death has been imposed.  If the federal courts were to require habeas petitioners to give up the privilege categorically and for all purposes, attorneys representing criminal defendants in state court would have to worry constantly about whether their casefiles and client conversations would someday fall into the hands of the prosecution. . . .  A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.

Bittaker v. Woodford, 331 F.3d 715, 722 (9th Cir. 2003) (footnote omitted).  The Bittaker court

4

also recognized the importance to a habeas petitioner of "obtaining a fair adjudication of his petition and securing a retrial untainted by constitutional errors." Id.  If a petitioner is successful, the federal court "should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free.  Giving the prosecution the advantage of obtaining the defense casefile-and possibly even forcing the first lawyer to testify against the client during the second trial-would assuredly not put the parties back at the same starting gate." Id. at 722-23.[2]  While these policies are important, the court is mindful that the Bittaker court was not balancing these interests against the public's right of access to court proceedings and right to know the bases of court decisions.  See Pintos, 2007 WL 2743502 at *5 ("The cognizable public interest in judicial records which underlies the 'compelling reasons' standard does not exist for documents produced between private litigants.").

        With these considerations in mind, the undersigned has reviewed the sealed portions of the final evidentiary hearing transcripts.  The court finds, tentatively, that the only portion of the evidentiary hearing transcript that should remain sealed is page 327, line 16 through page 328, line 5, because it reflects attorney work product and is potentially prejudicial to petitioner upon any retrial of the guilt or penalty phase of this matter.  Because the exhibits are voluminous and the parties are better acquainted with them, the court has not reviewed the

---

[2]  The court recognizes that the risk of use of information on retrial requires a certain amount of conjecture – petitioner must first succeed on his habeas petition, the state must then decide to retry him, and the information must be useful to the issues at retrial.   Courts have been reluctant to seal trial exhibits where the risk of harm is too speculative.  See Valley Broadcasting, 798 F.2d at 1295 (risk of jury taint in future cases from release of audio tapes in present case too conjectural where no pending case with issues related to the subject of the tapes); Safeway, 355 F. Supp. 2d at 1117 (defendants' statement that they "are considering entering into similar agreements for pending and future negotiations" not sufficiently specific; defendants must show just what provisions of current agreement would be used with just which future contracts and how disclosure now of those provisions would disclose key strategies and prejudice them).   Both of these courts indicated, however, that piece-by-piece examination of the exhibits at issue for specific possible harm may be sufficient, even where that harm may be somewhat speculative.  Valley Broadcasting, 793 F.2d at 1296; Safeway, 355 F. Supp. 2d at 1116-17.  This court has examined the sealed transcript to determine whether the harm from publication is sufficiently great that, on balance, the information must be sealed, even though that harm is only a possibility.

exhibits to determine whether portions should be redacted.  The parties will be directed to brief this issue, keeping in mind the limited sealing that will be accorded the final transcript.

        Accordingly, IT IS HEREBY ORDERED as follows:

1. Within twenty days of the filed date of this order, petitioner shall file under seal a statement regarding his position with respect to sealing the transcript and a proposal for sealing any portions of the exhibits. Petitioner shall specify whether the portion identified by the court should remain under seal, whether additional portions of the transcript and/or exhibits should be sealed, and, compelling reasons why those portions should be sealed.  If petitioner proposes sealing additional portions of the transcript and/or exhibits, he shall confirm that the information contained therein has not previously been made public in any proceeding or filing.

2. Within twenty days of the filing of petitioner's statement, respondent shall file a responsive statement, also under seal.  If respondent disputes petitioner's assertions that information has not been made public, respondent shall identify with specificity where in the state or federal record the information appeared.

3. Thereafter, the undersigned will designate which portions of the final transcript and exhibits shall remain under seal and set a post-hearing briefing schedule.

DATED: October 19, 2007.

_____
U.S. MAGISTRATE JUDGE

osband evi hrg seal.or