1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LANCE IAN OSBAND,

11          Petitioner,                No. CIV S-97-0152 WBS KJM

12       vs.                           DEATH PENALTY CASE

13   ROBERT L. AYERS, Jr.,
     Warden of San Quentin
14   State Prison,
                 Respondent.           ORDER
15   _____/

16          On March 18, 2008 the court heard argument on the question of sealing the

17   evidentiary hearing transcript.  Tivon Schardl appeared for petitioner.  Tim Brosnan participated

18   telephonically for petitioner.  Ward Campbell and Stephanie Mitchell appeared for respondent.

19   Upon review of the documents in support and opposition, upon hearing the arguments of counsel

20   and good cause appearing therefor, the court finds and orders as follows.

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

1

1      The court's prior orders set out the background for this issue in more detail.

2  Briefly, the issue requiring resolution arose before the start of the evidentiary hearing.  A prior

3  order protected from public disclosure information from trial counsel's files provided by

4  petitioner to respondent during discovery.  During preparation for the evidentiary hearing, the

5  court sought input from counsel about whether any information should be protected during the

6  evidentiary hearing and, if so, how.  The court specifically found the protective order applicable

7  only to the discovery proceedings but recognized that some information disclosed during hearing

8  might still require confidentiality.  The court made clear on the first day of the hearing that "at

9  least a narrow area of testimony and evidence . . . could be properly sealed, and that would be

10  evidence that would create prejudice on any retrial."  Evidentiary Hearing Transcript of

11  Proceedings on the morning of April 23, 2007 (4/23/07 A.M. ET) at 2:11-16.[1]  After it became

12  difficult to identify in advance just what might need to be sealed, and due to lack of public

13  interest in attending the evidentiary hearing, the court determined that the most efficient course

14  would be to temporarily seal the transcript of the entire testimony of petitioner's trial counsel and

15  of a defense jury consultant, and examine the sealing issue after the hearing.  ET 26:12-13; Apr.

16  24, 2007 Order.  After numerous problems and delays in transcription of the court reporter's

17  hearing notes, the transcript of the sealed portion was completed in October 2007.  At that time,

18  the court issued a tentative ruling reiterating the legal bases for keeping the evidentiary

19  proceedings as open as possible while protecting petitioner against prejudice upon any retrial,

20  /////

21  /////

22  /////

23  ———————————

24  [1]  Because the court reporter for the evidentiary hearing arrived late, the morning of the
   first day of the evidentiary hearing was recorded by the court's electronic sound recording and
   transcribed by Petrilla Reporting.  This transcript is separate from the transcript of the remainder
25  of the evidentiary hearing, which was recorded and transcribed by Diamond Court Reporters.
   The transcript for the remainder of the hearing starts with volume I, page 1, and is identified
26  herein as "ET."

PDF created with pdfFactory trial version www.pdffactory.com

1   and finding it appropriate to unseal the evidentiary hearing transcript with the exception of one

2   section.[2]  Oct. 22, 2007 Order.  Thereafter, the parties submitted briefs on the issue.

3   ANALYSIS

4           The initial issue before the court is determining how strong the presumption of

5   access should be with respect to an evidentiary hearing in a federal capital habeas corpus

6   proceeding.  This analysis necessarily considers access to this court's final decision on the merits

7   because that decision will analyze the evidence introduced at hearing.  The next question is when

8   that presumption of access may be overcome.  Petitioner attempts to re-frame these issues by

9   describing the question as one of public access to information protected by the attorney-client

10  privilege and work product protection.  That is not the relevant question.  Moreover, as explained

11  to the extent necessary below, the authority petitioner cites, when examined, often does not

12  support his argument.

13          In conducting the required analysis, the court must ask whether habeas corpus

14  evidentiary hearings, and necessarily final decisions on the merits, are traditionally afforded

15  secrecy.  After making this threshold determination the court can decide the standard by which

16  information presented at the evidentiary hearing may be sealed.  The court then can consider the

---

17

18      [2] Petitioner argues that the court violated his due process rights by making a tentative
    ruling.  The order is clear that the ruling is tentative only and even provides a briefing schedule
19  for the parties to challenge the ruling.  Oct. 22, 2007 Order at 2, 5, and 6.  Petitioner also makes
    the curious argument that the court has no right to consider this issue because, absent a challenge
20  from the public or the media, there is no case or controversy.  The conduct of courtroom
    proceedings and the format of any final decision are well within the purview of this court's
21  authority.  What parts, if any, of the evidentiary hearing transcript remain sealed is a critical
    decision that appropriately precedes any final findings and recommendations on the merits of this
22  case.  The suggestion that the court cannot sua sponte raise these procedural concerns is not well
    taken.  See Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 944 (7th
23  Cir. 1999) ("The determination of good cause cannot be elided by allowing the parties to seal
    whatever they want, for then the interest in publicity will go unprotected unless the media are
24  interested in the case and move to unseal. The judge is the primary representative of the public
    interest in the judicial process and is duty-bound therefore to review any request to seal the
25  record (or part of it). See Arthur R. Miller, "Confidentiality, Protective Orders, and Public
    Access to the Courts, 105 Harv. L. Rev. 427, 492 (1991). He may not rubber stamp a stipulation
    to seal the record. In re Krynicki, 983 F.2d 74 (7th Cir.1992) (chambers opinion).").
26

3

PDF created with pdfFactory trial version www.pdffactory.com

1   gist of the access issue:  must, as petitioner argues, all documents and testimony introduced
2   during an evidentiary hearing, which contain either communications protected by the attorney-
3   client privilege or attorney work product, be sealed, or should the court examine the potential for
4   prejudice of each item to determine whether sealing is appropriate?  After thorough analysis of
5   the case law, the policy reasons supporting both the right of public access and the privileges and
6   protections asserted by petitioner, and the nature of habeas corpus proceedings, this court
7   concludes that, whatever the standard used to determine public access to evidentiary hearings,
8   before any information subject to attorney-client privilege or work product protection presented
9   during a hearing on dispositive issues is sealed, petitioner should be required to demonstrate a
10  potential for prejudice resulting from disclosure of each item of information he seeks to seal.
11  I.  Legal Standards for Sealing Evidentiary Hearing Transcript and Exhibits
12              The First Amendment provides a right of access to criminal trial proceedings for
13  the public and press.  "Absent an overriding interest articulated in findings, the trial of a criminal
14  case must be open to the public."  Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 581
15  (1980) (plurality op.).  While the Court has not held that the First Amendment right also applies
16  to civil proceedings, it strongly suggested as much in Richmond Newspapers.  The Court's
17  plurality opinion noted that the case did not raise the question of the public's right to attend trials
18  of civil cases, "but we note that historically both civil and criminal trials have been
19  presumptively open."  Id. at 580 n.17.  Justice Stewart's concurrence is even clearer: "the First
20  and Fourteenth Amendments clearly give the press and the public a right of access to trials
21  themselves, civil as well as criminal."  Id. at 599.
22              Federal appellate courts considering the issue have held the First Amendment
23  right of access applicable to dispositive civil proceedings.  See Rushford v. New Yorker
24  Magazine, Inc. , 846 F.2d 249, 253 (4th Cir. 1988) ("We believe that the more rigorous First
25  Amendment standard should also apply to documents filed in connection with a summary
26  judgment motion in a civil case."); Westmoreland v. Columbia Broadcasting System, Inc., 752

4

1  F.2d 16, 23 (2d Cir. 1984); <u>Matter of Continental Illinois Securities Litigation</u>, 732 F.2d 1302,

2  1313 (7th Cir. 1984) (presumption of access applies to the hearings held and evidence introduced

3  in connection with motion to terminate claims); <u>Publicker Industries v. Cohen</u>, 733 F.2d 1066,

4  1068-71 (3d Cir. 1984) (First Amendment right of access applies to civil trials; "to limit the

5  public's access to civil trials there must be a showing that the denial serves an important

6  governmental interest and that there is no less restrictive way to serve that governmental

7  interest;" party must show good cause for sealing order based on specific showing of "clearly

8  defined and serious injury"); <u>Brown & Williamson Tobacco Corp. v. FTC</u>, 710 F.2d 1165, 1178

9  (6th Cir. 1983) (First Amendment right of access applies "as well to the civil trial."); <u>see also</u>

10  <u>United States v. Barer</u>, No. 06-MC-9021-BR, 2007 WL 445538 (D. Or. Feb. 2, 2007) (relying on

11  <u>Publicker</u> and Sixth and Seventh Circuit cases, court applies First Amendment right of access to

12  civil proceeding).  The Court of Appeals for the Ninth Circuit has not ruled on the issue.

13  <u>Hagestad v. Tragesser</u>, 49 F.3d 1430, 1434 n.6 (9th Cir. 1995) ("Neither the Supreme Court nor

14  this Circuit has ruled on the issue [of whether the First Amendment guarantees the public access

15  to judicial proceedings] in the context of a civil trial or records in civil cases.").

16          The policy considerations supporting access to criminal proceedings apply to civil

17  proceedings as well.  The Court of Appeals for the Sixth Circuit explained three bases for public

18  trials:

19          First, public trials play an important role as outlets for "community
           concern, hostility, and emotions."  When judicial decisions are
20          known to be just and when the legal system is moving to vindicate
           societal wrongs, members of the community are less likely to act as
21          self-appointed law enforcers or vigilantes.  "The crucial
           prophylactic aspects of the administration of justice cannot
22          function in the dark; no community catharsis can occur if justice is
           'done in a corner [or] in any covert manner.'"
23
           Second, public access provides a check on courts. . . .  Without
24          access to the proceedings, the public cannot analyze and critique
           the reasoning of the court.  The remedies or penalties imposed by
25          the court will be more readily accepted, or corrected if erroneous, if
           the public has an opportunity to review the facts presented to the
26          court.

5

1
               Finally, . . . open trials promote "true and accurate fact finding."
               Public access creates a critical audience and hence encourages
2
               truthful exposition of facts, an essential function of a trial.

3 Brown & Williamson, 710 F.2d at 1178 (quoting Richmond Newspapers, 448 U.S. at 571, 596).

4         The Eleventh and Eighth Circuit Courts of Appeals applied these policy

5 considerations to hold the First Amendment right of access applied to "hybrid" proceedings –

6 civil cases with criminal characteristics, a description applicable to a habeas corpus proceeding

7 as well.  In Newman v. Graddick, 696 F.2d 796 (11th Cir. 1983), the Court of Appeals found a

8 First Amendment right of access in a civil prison overcrowding case.  The court held:

9
               Focusing on the beneficial consequences of criminal trials being
               conducted in public, we see little difference between a criminal
10
               trial and the proceedings here which relate to the release of
               convicted prisoners. This litigation concerning penal
11
               administration in Alabama is of paramount importance to the
               citizens of that state. They have a legitimate interest in learning
12
               which inmates are being released from prison and the reasons why.
               They may reasonably want to know whether state officials are
13
               recommending the release of only those who are most deserving or
               those who have political or other influential connections. The type
14
               of prisoner being released may help the public in its consideration
               of whether to prevent overcrowding by increasing the size or
15
               number of penal facilities or by modifying criminal laws. If it is
               beneficial to have public scrutiny of criminal proceedings that may
16
               result in conviction and punishment, then it is also helpful to allow
               public access to civil proceedings that modify the earlier trials by
17
               freeing prisoners before their sentences are completed or parole has
               been granted.
18
19
               We need not here decide that the presumption of openness applies
               to all civil trials.  All we decide is that civil trials which pertain to
               the release or incarceration of prisoner and the conditions of their
20
               confinement are presumptively open to the press and public.

21 Newman, 696 F.2d at 801.  In In re Iowa Freedom of Information Council, 724 F.2d 658, 661

22 (8th Cir. 1983), the court concluded "that the protection of the First Amendment extends to

23 proceedings for contempt, a hybrid containing both civil and criminal characteristics."

24         This court finds a First Amendment right of access should apply to the evidentiary

25 hearing in this capital habeas proceeding.  The three policy considerations set out in Brown &

26 Williamson apply fully to this kind of proceeding.  There can be no question that death penalty

PDF created with pdfFactory trial version www.pdffactory.com

1  cases are enormously important to the public.  The "community catharsis" necessary in all

2  criminal cases is heightened in a death penalty case by the severity of the crime and imposition

3  and implementation of the ultimate penalty.  That catharsis can only occur if the public can

4  participate in the process, and fully understand and review the bases for court decisions.  That

5  few members of the public attended a hearing in this case is of little relevance.  Sealing

6  significant portions of the transcript would deny anyone interested in information about the case

7  the ability to review petitioner's claims and the bases for the court's decision.  Comity

8  considerations add another layer of intense public interest to a capital habeas case, given the

9  federal court's review of the legitimacy of a decision of the state's highest court.  That review

10  must be as transparent as possible.  As a sister court has expressed:

11              The Supreme Court observed in Press-Enterprise II, 478 U.S. at 13,
              106 S. Ct. 2735, that Criminal acts, especially certain violent
12              crimes, provoke **public** concern, outrage, and hostility. Further,
              since there are strong **public** interests not only in the prompt
13              execution of state court criminal judgments, but also in the
              assurance that state court criminal judgments are constitutional,
14              there is a corresponding interest in the **public's** access to, and
              understanding of, every stage of the appeals process to which
15              capital defendants are entitled in order to test the constitutionality
              of their death sentences. Considerations of **comity** and federalism
16              suggest that the **public's** interest in access to, and an understanding
              of, the appeals process is that much more significant with respect
17              to habeas corpus proceedings, where the legitimacy of state court
              criminal convictions are challenged in federal courts.

18

19  Ashworth v. Bagley, 351 F. Supp. 2d 786, 790 (S.D. Ohio 2005) (emphases in original).  The

20  second two policy considerations articulated in Brown & Williamson apply as well -- public

21  access permits an understanding of court processes and, if necessary, a check on the courts.  It

22  also promotes truthfulness and integrity, a concern in this and every proceeding.

23              Even if the First Amendment is inapplicable, the common law provides a right of

24  access.  "The existence of a common law right of access to judicial proceedings and to inspect

25  judicial records is beyond dispute."  Publicker, 733 F.2d at 1066.  Petitioner asks the court to use

26  an "experience and logic" test to determine whether the common law provides a right of access.

7

1   Experience is "'whether the place and process have historically been open to the press and

2   general public.'" Phoenix Newspapers, Inc. v. United States District Court, 156 F.3d 940, 946

3   (9th Cir. 1998) (quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 6 (1986)).  Logic is

4   "'whether public access plays a significant positive role in the functioning of the particular

5   process in question.'"  Id.  The latter "logic" test is easily met by the policy considerations

6   discussed above.  A review of case law shows that the "experience" has been one of open, public

7   discussion of the issues involved in a capital habeas petition.

8           Petitioner points to no case law demonstrating that either evidentiary hearings or

9   dispositive determinations in a federal habeas corpus proceeding that implicates attorney client

10   and work product privileges have been conducted in secrecy.  Rather, "with the exception of

11   proposed budgets and motions for the appropriate use of funds to employ experts filed in capital

12   habeas corpus proceedings involving indigent petitioners, this Court knows of no tradition that

13   habeas corpus proceedings are closed and that documents filed in such proceedings are sealed."

14   Ashworth, 351 F. Supp. 2d at 790.  The one qualification to this statement is the fairly recent use

15   of protective orders during discovery.[3]  However, petitioner has not shown that these discovery

16   protective orders have provided the basis for sealing documents submitted with dispositive

17   motions or evidentiary hearing testimony and exhibits for the purpose of deciding petitioner's

18   claims, or that they have been applied to shield from public view information upon which a

19   federal court relies in determining that a state court decision, in whole or in part, "was contrary

20   to, or involved an unreasonable application of, clearly established Federal law" or "was based on

21   an unreasonable determination of the facts" under 28 U.S.C. § 2254(d).

22   /////

23   /////

24   _____

25          [3]  This case was one of the first in which the court has ordered protection of documents
    discovered from trial counsel's files.  See Osband v. Woodford, 290 F.3d 1036 (9th Cir. 2002).
    The Court of Appeals upheld the procedure in this case and later in Bittaker v. Woodford, 331

26   F.3d 715 (9th Cir. 2003).

PDF created with pdfFactory trial version www.pdffactory.com

1    In considering the presumption of public access to court proceedings, it is worth

2   noting some courts first look to the weight of the presumption:

3   When there are objections to the disclosure of judicial documents,
    district courts must determine the weight of the presumption in
4   favor of public access by evaluating the role of the material at issue
    in the exercise of Article III judicial power and the resultant value
5   of such information to those monitoring the federal courts.
    Generally, the information will fall somewhere on a continuum
6   from matters that directly affect an adjudication to matters that
    come within a court's purview solely to insure their irrelevance.

7
    The presumption is given great weight where the requested
8   documents were introduced at trial or were otherwise material to a
    court's disposition of a case on the merits. In each of these cases,
9   the strong weight to be accorded the public right of access to
    judicial documents was largely derived from the role those
10  documents played in determining litigants' substantive rights-
    conduct at the heart of Article III-and from the need for public
11  monitoring of that conduct.
    ...
12
    After the weight of the presumption is established, district courts
13  must then balance countervailing factors, such as law enforcement
    concerns, judicial efficiency, and the privacy interests of the
14  parties, against the presumption. The task of the courts is to weigh
    the interests advanced by the parties in light of the public interest
15  and the duty of the courts.

16  Diversified Group, Inc. v. Daugerdas, 217 F.R.D. 152, 158-59 (S.D.N.Y. 2003) (citations

17  omitted).  Under a weighing test such as this, all evidence introduced during the evidentiary

18  hearing, like a trial, should be entitled to a heavy presumption of access.  See In re Adobe

19  Systems, Inc. Securities Litigation, 141 F.R.D. 155, 158 (N.D. Cal. 1992) ("The presumption of

20  access is strongest regarding documents offered in evidence at trial, even if the documents are not

21  admitted.").

22    Petitioner relies upon cases involving proceedings very different from the

23  evidentiary hearing, and final merits determination, at issue here.  Most cases petitioner cites

24  involve the right of access to particular documents.  These cases might have relevance to the

25  issue of access to exhibits introduced during the evidentiary hearing.  However, the right to

26  access documents filed with the court differs from the right of access to the transcript of the

PDF created with pdfFactory trial version www.pdffactory.com

1   evidentiary hearing itself.  See Valley Broadcasting Co. v. United States District Court, 798 F.2d
2   1289, 1293 (9th Cir. 1986).  The right to documents is often characterized as a common law right
3   that is available only for "judicial documents."  Id.; Lugosch v. Pyramid Co. of Onondaga, 435
4   F.3d 110, 119 (2d Cir. 2006).  The Court of Appeals for the Second Circuit held that documents
5   are "judicial" if they are "relevant to the performance of the judicial function and useful in the
6   judicial process."  Id.  In the Ninth Circuit, documents introduced at trial or that are material to
7   the court's disposition of the merits are "judicial."  San Jose Mercury News, Inc. v. United States
8   District Court, 187 F.3d 1096, 1102 (9th Cir. 1999) (the federal common law right of public
9   access extends to materials submitted in connection with motions for summary judgment in civil
10  cases prior to judgment).  All exhibits submitted during the evidentiary hearing in this matter are
11  thus "judicial."

12          One of petitioner's arguments is that judicial documents are only those necessary
13  to the court's final determination and therefore it is premature to consider what should and
14  should not be made public.  The case law, however, identifies both documents introduced during
15  a hearing as well as those necessary to a court's decision as "judicial."  Adoption of petitioner's
16  narrow construction of "judicial documents" would defeat one of the primary purposes of the
17  public access doctrine.  Without knowing all the information available to the court, the public
18  would not be able to analyze and critique the court's reasoning.  See Brown & Williamson, 710
19  F.2d at 1178; In re Adobe Systems, Inc, 141 F.R.D. at 158 ("strong" presumption of access for
20  documents filed with the court; "stronger" presumption for documents upon which court relies in
21  making dispositive decision; "strongest" presumption for documents offered in evidence at trial).

22          Even when considering petitioner's citations only with respect to access to
23  information contained in evidentiary hearing exhibits, the citations are not helpful because they
24  involve unique situations that differ significantly from those involving access to examine trial
25  /////
26  /////

10

PDF created with pdfFactory trial version www.pdffactory.com

1   exhibits.[4]  For example, in <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589 (1978), the

2   Court held that neither the common law right of access to judicial records nor the First

3   Amendment right of access to criminal trials gave the press the right to obtain and copy tape

4   recordings introduced during a criminal trial.  The Court relied, in part, on the existence of

5   alternate means of public access to those tapes.  In addition, the press was permitted to listen to

6   the tapes and was given transcripts of them.  435 U.S. at 609.  In <u>Times Mirror Co.</u>, 873 F.2d at

7   1218, the Court of Appeals found no right of access to search warrants and supporting affidavits

8   relating to an ongoing investigation or to grand jury proceedings because these proceedings

9   traditionally are secret.  There was no history of access and the court found no important public

10   need justifying access.  In <u>Valley Broadcasting Co.</u>, 798 F.2d at 1293-97, the Court of Appeals

11   considered the right to copy audio and video tape exhibits as they were received in evidence.

12   The court found a common law right of access to these "judicial documents" and held the press

13   had a right to obtain and copy them.  In <u>United States v. Corbitt</u>, 879 F.2d 224, 229 (7th Cir.

14   1989), the court examined public access to pre-sentence reports, which "have traditionally been

15   confidential."[5]

16        A.  <u>Exceptions to the First Amendment Right of Access</u>

17            The First Amendment right of access, of course, is not absolute.  Access may be

18   denied for interests defined as "overriding," "compelling," or "important."  In <u>Richmond</u>

19   <u>Newspapers</u>, the Court specified that any "overriding" interest must be "articulated in findings"

20   _____

21        [4]  For purposes of this order's examination of access to exhibits, the court has in mind a
     scenario of simple public access to review and copy exhibits.  If more complex access issues

22   arise later, they will be addressed at that time.

23        [5]  Petitioner also cites the decision in <u>Crowe v. County of San Diego</u>, 210 F. Supp. 2d
     1189 (S.D. Cal. 2002), which is inapposite.  There, the court considered a news media motion to

24   unseal transcripts of meetings in which a judge questioned law enforcement to determine whether
     a criminal investigation was proceeding with reasonable diligence.  The court found no right of

25   access to these unusual proceedings "to which the Court has found no parallel."  210 F. Supp. 2d
     at 1192.  The weight of any right of access to the ex parte conversations in <u>Crowe</u> bears no

26   relationship to consideration of the right of access to an evidentiary hearing on the merits of a
     capital habeas case.

1  before access may be denied, in that case to the criminal trial itself.  448 U.S. at 581.  In

2  Rushford, the court held the denial of access to documents filed in connection with a summary

3  judgment motion must be necessitated by "a compelling government interest and narrowly

4  tailored to serve that interest." 846 F.2d at 253 (quoting Globe Newspaper Co. v. Superior Court,

5  457 U.S. 596 (1982)); see also Valley Broadcasting, 798 F.2d at 1292 n.4 (same standard).  The

6  Court of Appeals for the Third Circuit explained that limitation of public access to civil trials

7  requires a showing that "the denial serves an important governmental interest and that there is no

8  less restrictive way to serve that governmental interest."  Publicker, 733 F.2d at 1070

9  (proceedings on motion for preliminary injunction must be public).

10      B.  Exceptions to the Common Law Right of Access

11          The Court of Appeals for the Ninth Circuit has noted that the "common-law right

12  is not of constitutional dimension, is not absolute, and is not entitled to the same level of

13  protection afforded constitutional rights."  Valley Broadcasting, 798 F.2d at 1293.  However, the

14  parameters of the common law test are not entirely clear.  In Valley Broadcasting, the Court of

15  Appeals defined the common law test as a "presumption of access," which may be overcome by

16  "articulated facts known to the court, not on the basis of unsupported hypothesis or conjecture."

17  Id. at 1294.  The court in Valley Broadcasting distinguished the "compelling circumstances" test

18  and noted that it carries a "built-in bias favoring access."  Id. at 1293.

19          This common law presumption in favor of access has been characterized as

20  "strong."  See San Jose Mercury News, 187 F.3d at 1102; Hagestad, 49 F.3d at 1434.  Many

21  decisions of the Court of Appeals for the Ninth Circuit have held that the presumption may be

22  overcome by "a compelling reason" for which the court has articulated a factual basis, "without

23  relying on hypothesis or conjecture."  Hagestad, 49 F.3d at 1434; see also  Pintos v. Pacific

24  Creditors Ass'n., 504 F.3d 792, 801 (9th Cir. 2007); Kamakana v. City and County of Honolulu,

25  447 F.3d 1172, 1178 (9th Cir. 2006) ("[a] party seeking to seal a judicial record ... bears the

26  /////

12

1   burden of overcoming ... the compelling reasons" standard); <u>Foltz v. State Farm Mut. Auto. Ins.</u>

2   <u>Co.</u>, 331 F.3d 1122, 1135-36 (9th Cir. 2003).[6]

3           Petitioner argues that the "compelling reasons" test is too strict and ignores Ninth

4   Circuit precedent establishing a test under which "sufficiently important countervailing interests"

5   can overcome the presumption of access.  Petitioner's argument that these are two separate tests

6   is based on a selective reading of the case law he cites, and is not well taken.  While the test has

7   been described as evaluating whether "sufficiently important countervailing interests" exist in

8   <u>San Jose Mercury News</u> and in the case petitioner cites, <u>Phillips v. General Motors</u>, both cases

9   also define the test as a "compelling reasons" test.  <u>San Jose Mercury News</u>, 187 F.3d at 1102-03

10  ("presumption can be overcome by sufficiently important countervailing interests" and district

11  court must balance the interests and base its decision on "compelling reasons and specific factual

12  findings"); <u>Phillips v. General Motors Corp.</u>, 307 F.3d 1206, 1212 (9th Cir. 2002) (court finds

13  presumption of access rebutted for a sealed discovery document submitted with a non-dispositive

14  motion; uses same language as that used in <u>San Jose Mercury News</u>).

15  II.  <u>Effect of Protective Order</u>

16          This court already has determined that the protective order issued during the

17  discovery phase does not automatically extend to documents or information admitted during the

18  evidentiary hearing.  April 24 and October 22, 2007 Orders.  None of petitioner's arguments

19  persuade the court to change this prior determination.  A protective order issued during discovery

20  should be re-evaluated at the time of dispositive proceedings.  <u>See</u> <u>Phillips</u>, 307 F.3d 1206 (9th

21  Cir. 2006); <u>Baxter International, Inc. v. Abbott Laboratories</u>, 297 F.3d 544, 546-47 (7th Cir.

22  ────────────────

23          [6] Petitioner complains strenuously about this court's prior identification of the
    "compelling reasons" test as a First Amendment test.  In its October 22, 2007 order, the court
24  cited cases which used the "compelling reasons" test but incorrectly identified that test as arising
    out of the First Amendment.  The court stands corrected on this point.  As set forth above, while
25  the "compelling reasons" test has been used frequently in this circuit in civil cases, the Court of
    Appeals for the Ninth Circuit has not held the First Amendment applicable to a civil proceeding,
26  including a habeas corpus proceeding.

13

1   2002) ("[D]ispositive documents in any litigation enter the public record notwithstanding any

2   earlier agreement.  How else are observers to know what the suit is about or assess the judges'

3   disposition of it?"); California v. Safeway, 355 F. Supp. 2d 1111 (C.D. Cal. 2005).

4   III.  Requirement that Petitioner Show Potential for Prejudice to Overcome Presumption of
          Access

5

6               For purposes of this analysis, the court will assume without deciding that the

7   common law standard of access applies, that that standard creates a weaker presumption of

8   access than does the First Amendment, but that the presumption is weighty given the dispositive

9   nature of the proceedings related to the evidentiary hearing.  The question, then, is whether

10  information introduced during an evidentiary hearing on the merits of capital habeas corpus

11  claims and subject to the attorney-client privilege and/or work product protection is entitled

12  automatically to be kept from public view.[7]  Petitioner argues it is.  He has little, if any, support

13  for the proposition in a case such as this where petitioner has waived those privileges and

14  protections, however narrowly, by bringing ineffective assistance of counsel claims in a habeas

15  action.  This court has sought to confirm that any waiver is a narrow one by suggesting that

16  petitioner demonstrate the potential for prejudice if the information he seeks to protect were to be

17  made public.  Petitioner has declined this invitation.  In light of the policies underlying public

18  access, the importance of the evidentiary privileges and protections claimed by petitioner, and

19  habeas corpus review, this court finds that requiring a showing of the potential for prejudice to be

20  not only supported by case law but the most equitable approach.

21  /////

22  /////

23

———————————————

24      [7]  During argument on this issue, the court asked petitioner's counsel whether it would be
        appropriate to make a distinction between the privilege for attorney-client communications and

25      the protections for attorney work product.  Petitioner's counsel simply replied "no."
        Respondent's counsel argued that any communications subject to the privilege should receive

26      greater protection than work product.

14

1          The importance of the attorney-client privilege is unquestionable, of course.[8]  The

2    state court has described it as "'fundamental to [its] legal system" and "a hallmark of [its]

3    jurisprudence.'" Bittaker, 331 F.3d at 721 (quoting People v. Superior Court ( Laff ), 25 Cal. 4th

4    703, 715 (2001)).  An attorney's duty to "maintain inviolate the confidence" of his or her client is

5    the basis for an evidentiary rule that "is held vital to the effective administration of justice." Id.

6    (citing Roberts v. City of Palmdale, 5 Cal. 4th 363, 380 (1993)).[9]  The court in Bittaker

7    recognized the tension between the rule that a petitioner waives the privilege by making an

8    ineffective assistance of counsel claim and the important policy behind the privilege – that of

9    encouraging "frank attorney-client communications." Id. at 722.  The court found the work

10   product doctrine to have similar importance because it encourages zealous representation. Id. &

11   n.6.  Based on these policies, the Bittaker court held that the waiver should be drawn as narrowly

12   as possible so that if the petitioner were successful on his ineffective assistance of counsel

13   claims, he would not be prejudiced upon any retrial. Id. at 722-23.  Moreover, the court in

14   Bittaker examined only the discovery question raised by the production of the petitioner's trial

15   counsel's files to the respondent to permit respondent to defend against the petitioner's claims.

16   The court did not consider the public access issues considered here.

17          Petitioner claims to have direct support for his assertion that privileged and

18   protected information automatically is entitled to privacy in the present case.  He characterizes a

19   _____

20          [8]  Petitioner also argues his right to confidentially consult with an attorney is protected by
     the First Amendment.  Once again, the two cases counsel cites do not go as far as suggested.
21   Neither addresses the confidential aspect of the attorney-client relationship.  See Mothershed v.
     Justices of Supreme Court, 410 F.3d 602 (9th Cir. 2005) (court recognizes First Amendment
     right to hire and consult attorney in challenge to court rule restricting practice by out-of-state
22   attorneys); Frye v. Tenderloin Housing Clinic, Inc., 38 Cal. 4th 23, 39-40 (2006) (First
     Amendment encompasses associational right of groups, such as legal aid organization in this
23   case, to unite to assert their legal rights as effectively and economically as practicable).

24          [9]  Petitioner quotes a statement from United States v. Mett, 178 F.3d 1058, 1065 (9th Cir.
     1999), that "where attorney-client privilege is concerned, hard cases should be resolved in favor
25   of the privilege, not in favor of disclosure."  The issues in Mett bear no resemblance to those in
     the present case.  The court in Mett made this statement when considering whether an
26   attorney/client relationship existed.

15

PDF created with pdfFactory trial version www.pdffactory.com

1   number of cases as follows: "courts applied a compelling-interest test, and determined that the

2   interests protected by the attorney-client privilege and work-product doctrine outweighed the

3   public's right of access to dispositive, but privileged information, in civil cases." Pet'r's Mar. 6,

4   2008 Reply at 2. Despite the adamancy of his rhetoric, petitioner's position does not have the

5   support he claims for application to the present case.

6            One of the cases upon which petitioner relies is Lugosch v. Congel, No. CIV 1:00-

7   CV-0784, 2006 WL 931687 (N.D.N.Y. Mar. 7, 2006). There, the court described the attorney-

8   client privilege and work product as "of the highest values within our judicial system." Id. at

9   *17. However, the issue in that case was waiver. The court only found the privilege and

10   protection were "compelling reasons" and "countervailing factors" that "sufficiently outweigh

11   the public's right of access" where those protections were not waived. Id. at *36. Where the

12   court found waiver, the information was fully disclosed. Id. at **37, 46. In Ello v. Singh, 531 F.

13   Supp. 2d 552 (S.D.N.Y. 2007), the court temporarily sealed attorney-client privileged documents

14   submitted along with a complaint only long enough to give the parties an opportunity to argue

15   whether the documents should be sealed. In Smith v. McDaniel, No. 2:07-CV-00318-JCM-RJJ,

16   2007 WL 3203116, at *1 (D. Nev. Oct. 25, 2007), the court found moot the issue of sealing

17   documents filed along with a request for a stay due to petitioner's incompetence; in dicta, and

18   without much analysis, the court said it would have considered sealing the documents on the

19   merits. The court did not consider the nature of the stay proceedings, which, unlike the

20   proceedings at issue here, were not dispositive of the merits of the case. Petitioner also cites

21   Baxter, in which the Court of Appeals for the Seventh Circuit confirmed prior holdings that

22   "*dispositive* documents in any litigation enter the public record notwithstanding any earlier

23   agreement." 297 F.3d at 546-47 (emphasis in original). The court in Baxter did identify a few

24   categories of documents to be kept confidential once their bearing on the merits was revealed.

25   Those categories included trade secrets and attorney-client privileged documents. However, its

26   statement about privilege is only part of a general discussion of access. Neither the privilege nor

16

PDF created with pdfFactory trial version www.pdffactory.com

1   work product protection is discussed and the court did not discuss the effect of any waiver.

2   Similarly, while the court in <u>Diversified Group, Inc. v. Daugerdas</u>, 304 F. Supp. 2d 507, 511

3   (S.D.N.Y. 2003), did state that the attorney-client privilege was sufficient to outweigh the

4   presumption of access for summary judgment documents, waiver was not an issue in that case.[10]

5           Petitioner largely ignores the distinction between assertion of the attorney-client

6   privilege by a party defending a suit and assertion of the privilege offensively, as here, by the

7   party bringing claims.  His use of the <u>Daugerdas</u> case illustrates his failure to tell the whole story;

8   <u>Daugerdas</u> does not directly address the issue.  Rather, in a prior opinion, the same court

9   considered the propriety of unsealing documents submitted by the parties in support and

10  opposition to motions for summary judgment.  <u>The Diversified Group, Inc. v. Daugerdas</u>, 217

11  F.R.D. 152 (S.D.N.Y. 2003) ("<u>Daugerdas I</u>").  This case was a suit by the plaintiff, a tax

12  marketing firm, against its attorney for breach of fiduciary duty and breach of contract regarding

13  a tax strategy.  The parties stipulated to, and the court ordered, that documents containing

14  attorney-client communications and proprietary information would be filed under seal.  <u>Id.</u> at

15  156.  Later, after the court's ruling on summary judgment and a settlement of the case, a legal

16  periodical sought access to the sealed documents.  The court held that the attorney-client

17  privilege was a countervailing factor sufficient to overcome the "strong presumption" of public

18  access to the sealed documents.  <u>Id.</u> at 159-62.  Whether or not the plaintiff had waived any right

19  to assert a privilege was not discussed.  Rather, the court specifically distinguished cases

20  involving offensive use of privileged material by the holder of the privilege.  <u>Id.</u> at 161 n.7

21  (distinguishing <u>Joy v. North</u>, 692 F.2d 880 (2d Cir. 1982)).  Every case upon which the

22  <u>Daugerdas I</u> court relied involved defensive use of privileged material.  In fact, most of those

23  _____

24          [10] During the hearing on this issue, petitioner also argued the Court of Appeals decision in
    <u>Rohan ex rel. Gates v. Woodford</u>, 334 F.3d 803, 806-07 (9th Cir. 2003) supported sealing.  The
25  district court in that case issued an order under seal regarding the petitioner's competency to
    proceed with his habeas petition.  As petitioner's counsel admitted during the hearing in this
26  case, the issues in <u>Rohan</u> were not dispositive.  <u>Rohan</u> does not support petitioner's arguments.

                                                17

1  cases distinguished the situation here -- waiver of the privilege and protections by a petitioner

2  alleging ineffective assistance of counsel -- from the situations resolved by the courts' decisions

3  in those cases. Id. at 160-61 & n.7; see Siedle v. Putnam Investments, Inc., 147 F.3d 7, 11 (1st

4  Cir. 1998) (court specifically says privilege not waived in suit by lawyer against former client;

5  court distinguishes cases where client waived privilege to assert ineffective assistance of

6  counsel); Crystal Grower's Corp. v. Dobbins, 616 F.2d 458 (10th Cir. 1980) (attorney-client

7  privilege not waived where some communications between plaintiff and its attorneys relevant to

8  lawsuit but plaintiff's suit not against its attorneys); Dombrowski v. Bell Atlantic Corp., 128 F.

9  Supp. 2d 216 (E.D. Pa. 2000) (no waiver in attorney's suit against former client); First Fed. Sav.

10 & Loan Ass'n v. Oppenheim, Appel, Dixon & Co., 110 F.R.D. 557 (S.D.N.Y. 1986) (no issue of

11 waiver for production of attorney-client privileged materials by third party defendant; court notes

12 rule that where client initiates a dispute against attorney, privilege is waived).

13        Petitioner also claims, without citation to authority, that requiring revelation of

14 information covered by the protective order "promises dramatic disruptions in this case and many

15 others pending on habeas and at trial." Pet'r's Dec. 10, 2007 Brief re Sealing Portions of Evid.

16 Hrg. Transcript at 3:5-6. Because the precise issue presented here does not appear to have been

17 addressed previously, and certainly not in controlling precedent, the court concludes these

18 statements are hyperbolic, at best.[11]  Even a cursory review of the case law, summarized below,

19 shows that evidentiary hearings on ineffective assistance of counsel claims have been considered

20 open, and privileges and protections have been considered waived.

21        In considering ineffective assistance of counsel claims, courts have long examined

22 not only attorney work product, both the work performed and counsel's opinions, but also, where

23 _____

24      [11] It appears the few district courts that have dealt to date with the emerging issue
addressed in this order have not done so in a particularly satisfactory manner that provides this
court with guidance. Petitioner himself appears to have sent mixed messages. Petitioner's

25 motion for evidentiary hearing was filed publicly, despite the fact that it included some
information covered by the protective order. See Mar. 18, 2005 Order. Most importantly, he has

26 not shown he has been prejudiced in any way by the proceedings so far.

18

1   relevant, attorney-client communications.  Not only does the resulting body of law exist, it was

2   and is necessary to the creation of Sixth Amendment standards of attorney conduct.  Shrouding

3   courts' consideration of claims of ineffective assistance of counsel in a broad cloak of secrecy

4   would defeat an essential purpose of courts' review of these claims:  defining standards for the

5   appropriate representation of criminal defendants.  Petitioner's assertion that "there has never

6   been access to such materials" attempts to rewrite a well-established line of cases.   Pet'r's Dec.

7   10, 2007 Brief Re Sealing Portions of Evid. Hrg. Transcript at 16.

8            Where relevant, attorney-client communications are discussed in courts' analyses

9   of Sixth Amendment claims.  The seminal case setting forth the standards for analysis of an

10   ineffective assistance of counsel claim is, of course, Strickland v. Washington, 466 U.S. 668

11   (1984).  There, the Court stated that consideration of communications between the defendant and

12   his attorney may be necessary when examining counsel's work: "inquiry into counsel's

13   conversations with the defendant may be critical to a proper assessment of counsel's

14   investigation decisions, just as it may be critical to a proper assessment of counsel's other

15   litigation decisions." 466 U.S. at 691.  The petitioner's conversations with counsel were a key to

16   the Court's determination that counsel did not err in limiting mitigating evidence in Schriro v.

17   Landrigan, ___ U.S. ___, 127 S. Ct. 1933 (2007).   In Nix v. Whiteside, 475 U.S. 157 (1986), the

18   Court extensively discussed the petitioner's communications with his trial attorney to analyze a

19   claim that the attorney was ineffective for failing to cooperate with the petitioner's desire to

20   testify.  In Womack v. Del Papa, 497 F.3d 998, 1002 (9th Cir. 2007), cert. denied, 128 S.Ct. 928

21   (2008), the Court of Appeals discussed attorney-client communications when considering the

22   reasonableness of counsel's conduct in advising the defendant of the consequences of a guilty

23   plea.

24            Courts frequently discuss attorney work product, not merely what counsel did but

25   why he or she did it.  This latter sort of "opinion work product" is often considered to be entitled

26

19

PDF created with pdfFactory trial version www.pdffactory.com

1    to greater protection than "fact work product."[12]  See, e.g., Moreno v. Autozone, Inc., No. C-05-

2    4432 CRB, 2008 WL 906510 (N.D. Cal. Apr. 1, 2008).  Yet courts openly review both kinds of

3    work in analyzing ineffective assistance of counsel claims.[13]  For example, the Court in

4    Strickland reviewed counsel's "strategic choices" by looking not only at what counsel did but

5    what he thought.  466 U.S. at 699.  A review of recent cases shows that courts frequently

6    examine counsel's thought processes to determine whether decisions made by counsel

7    constituted legitimate strategy or uninformed choices.  See Doe v. Woodford, 508 F.3d 563, 568

8    (9th Cir. 2007) (discussion of pre-trial psychiatric exam; counsel's explanation of decision to

9    allow petitioner to make a statement to police); Medley v. Runnels, 506 F.3d 857, 861 (9th Cir.

10   2007) (discussion of basis for attorney's recommendation to client that he not testify), cert.

11   denied, 128 S. Ct. 1878 (2008); Brown v. Ornoski, 503 F.3d 1006, 1013 (9th Cir. 2007)

12   (counsel's opinions regarding benefits of introducing psychiatric testimony at trial; counsel's

13   impressions of defendant's mental state and his reasons why he did or did not investigate

14   mitigating evidence); Correll v. Ryan, ___ F.3d ___, 2008 WL 2039074, at *21 (9th Cir. May 14,

15   2008) (discussion of defense counsel's strategy: attempting to show the petitioner a good person;

16   he "was basically hoping [the judge] would think it was a one-time incident and want to give Mr.

17   Correll a break;" counsel did not feel other potentially mitigating evidence, such as evidence of

18   drug addiction and abuse, was "favorable"); Frierson v. Woodford, 463 F.3d 982, 987 (9th Cir.

19   _____

20         [12]  Generally, "fact work product" is defined as "written or oral information transmitted to
       the attorney and recorded as conveyed by the client," while "opinion work product" is "any
21     material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal
       theories."  In re Antitrust Grand Jury, 805 F.2d 155, 163 (6th Cir. 1986) (citing Hickman v.
22     Taylor, 329 U.S. 495 (1947)).

23         [13]  During argument, petitioner's counsel was asked how he reconciled the fact that there
       exists a body of case law regarding ineffective assistance of counsel where waiver of the
24     privileges and protections is assumed and the attorney's work discussed publicly.  Petitioner's
       counsel responded that most cases discuss only what counsel did or did not do at a certain time.
25     This explanation effectively concedes that what counsel did, in other words the product of
       counsel's work, is commonly discussed in published cases.  It ignores, however, the numerous
26     cases discussing opinion work product.

PDF created with pdfFactory trial version www.pdffactory.com

1   2006) (discussion of not only what counsel did and did not do but his rationale and opinions for

2   not doing certain investigations and for relying on certain evidence at the penalty phase), aff'd in

3   relevant part, 202 Fed. Appx. 152 (9th Cir. 2006), cert. denied, 127 S. Ct. 2976 (2007); Reynoso

4   v. Giurbino, 462 F.3d 1099, 1114-15 (9th Cir. 2006) (discussion of trial counsel's evidentiary

5   hearing testimony regarding her strategies).  Defense attorneys' misunderstanding of the law and

6   investigative efforts were discussed by the Court in Williams v. Taylor, 529 U.S. 362, 395

7   (2000).  See also Lankford v. Arave, 468 F.3d 578, 584-85 (9th Cir. 2006) (discussion of

8   counsel's testimony about his legal research on jury instructions), cert. denied, 128 S. Ct. 206

9   (2007).[14]

10          Petitioner's position also is undermined by his own publication of both some fact

11   and some opinion work product of his trial attorneys.  For example, attached to his motion for an

12   evidentiary hearing are transcripts of witness interviews conducted by defense investigators.

13   Exs. H and I to Pet'r's Oct. 1, 2003 Mot. for Evid. Hrg.  Petitioner also has provided a letter and

14   declaration from an attorney hired by petitioner's family to represent him.  They include that

15   attorney's opinions.  Id., Ex. Q; Exs. P, Q to Pet'r's May 18, 2005 Mot. for Evid. Hrg.  During

16   his state habeas proceeding, petitioner provided a declaration from his first appointed attorney,

17   Burton Loehr, that includes Loehr's impressions of petitioner and even a description of

18   communications to Loehr from petitioner.  Ex. 3 to 1997 State Petition, lodged here on Apr. 13,

19   1999.

20   /////

---

21      [14] In addition, a recent practice guide on California criminal law recognizes that attorney-

22   client privileged information and work product may be disclosed if a defendant later raises a
    claim of ineffective assistance of counsel.  See L. Levenson, California Criminal Procedure

23   § 1:12 ("when a client brings an ineffective assistance of counsel challenge, the attorney may
    disclose in court any client confidences and secrets regarding relevant matters") and Comment to

24   § 30:20 ("Most petitions for a writ of habeas corpus alleging ineffective assistance of counsel
    must be supported by declarations from the petitioner and trial counsel.  Filing such declarations

25   ordinarily constitutes a waiver of the attorney-client privilege.") (2006 ed.).   Certainly, criminal
    defense counsel in California have been and are aware that privileged and protected information

26   may become public at a later time, particularly if a petition for habeas corpus is filed.

PDF created with pdfFactory trial version www.pdffactory.com

1    Because petitioner has failed to establish a basis for an across-the-board exception

2  to the common law right of access in this case to all information covered by the attorney-client

3  privilege or work product protections, this court must make a final determination whether some

4  such information in the evidentiary hearing record is entitled to protection.  The case law

5  discussed above sets out a reasonable standard for that determination:  there must be an

6  important countervailing interest. This court must then articulate a factual basis of the reasons for

7  sealing testimony or documents presented at the evidentiary hearing.  That factual basis may not

8  be based on hypothesis or conjecture.

9    The Court of Appeals for this circuit has discussed the great importance to a

10  habeas petitioner of "obtaining a fair adjudication of his petition and securing a retrial untainted

11  by constitutional errors." Bittaker, 331 F.3d at 722.  If a petitioner is successful here, the federal

12  court "should aim to restore him to the position he would have occupied, had the first trial been

13  constitutionally error-free.  Giving the prosecution the advantage of obtaining the defense case

14  file-and possibly even forcing the first lawyer to testify against the client during the second trial-

15  would assuredly not put the parties back at the same starting gate." Id. at 722-23.  This court

16  finds this kind of potential for prejudice upon retrial to be the sort of countervailing interest that

17  weighs in favor of protecting the underlying evidence from public view.[15]  Protecting such

18  potentially prejudicial information will narrow petitioner's waiver, as required by the court in

19  Bittaker.  Id. at 722.  It also recognizes petitioner's right to a fair retrial, should he obtain one in

20  the future.  Finally, it strikes an equitable balance between the unprecedented broad cloak of

21  secrecy petitioner seeks and the public's right of access to the bases for the federal court's

22  decision-making in this death penalty case.

23  _____

24  [15]  This court has recognized previously that the risk of use of information on retrial
requires a certain amount of conjecture.  See Oct. 22, 2007 Order at 5 n.2.  However, given the
risks to petitioner, and the importance of his ability to seek redress for a violation of his
25  constitutional right to counsel, the speculative nature of petitioner's harm should not defeat his
right to protect potentially harmful information, subject to the court's careful consideration of
26  each item of information.

PDF created with pdfFactory trial version www.pdffactory.com

1      Accordingly, and good cause appearing, IT IS HEREBY ORDERED as follows:

2           1. Within twenty days of the filed date of this order, petitioner shall file under

3  seal a statement identifying each portion of the evidentiary hearing transcript, and each portion of

4  any exhibits, that should remain under seal.  In this statement, petitioner shall explain:  (a) the

5  relevance of the information he seeks to seal to an issue which may be raised on any retrial,

6  (b) the likelihood that the issue may be raised on any retrial, and (c) the prejudice he could suffer

7  should that information be revealed.

8           2. Within twenty days of the filing of petitioner's statement, respondent shall file

9  a responsive statement, also under seal.

10           3. Within ten days of the filing of respondent's response, petitioner may file a

11  reply.

12           4. Thereafter, the court will designate those portions of the final transcript and

13  exhibits that shall remain under seal, and set a post-hearing briefing schedule.  At that time, the

14  court will issue a protective order for the sealed information that will, among other things,

15  specify that the information will be protected throughout the proceedings incident to the petition

16  for writ of habeas corpus pending before this court, and through any retrial of all or any portion

17  of petitioner's criminal case.

18  DATED:  June 13, 2008.

19

20                                        _____

21                                        U.S. MAGISTRATE JUDGE

22

23

24

25

26

PDF created with pdfFactory trial version www.pdffactory.com